**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DERICIA GREEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 4:26-cv-01586** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAKES VENTURE, LLC d/b/a FRESH THYME MARKET,** | ) | **Jury Trial Demanded** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, Dericia Green ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Lakes Venture, LLC d/b/a Fresh Thyme Market ("Defendant"), and in support states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under 42 U.S.C. § 1981, seeking redress for Defendant's race-based discrimination against Plaintiff in the making, performance, modification, or termination of the employment relationship.

2. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), seeking redress for Defendant's race-based discrimination, race-based harassment, and retaliation.

3. This lawsuit further arises under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), seeking redress for Defendant's interference with Plaintiff's FMLA rights and retaliation against Plaintiff for attempting to exercise her FMLA rights.

4. This lawsuit further arises under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA"), and under the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 et seq. ("MMWL"), seeking redress for Defendant's failure to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) in a workweek.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) as 42 U.S.C. § 1981, Title VII, the FMLA, and the FLSA are federal statutes.

6. Venue of this action properly lies in the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

7. This Court has supplemental jurisdiction over Plaintiff's MMWL claim pursuant to 28 U.S.C. § 1367 because that claim is so related to Plaintiff's federal claims that it forms part of the same case or controversy.

## ADMINISTRATIVE PREREQUISITES

8. All conditions precedent to suit under Title VII have occurred or been satisfied.

9. On or about March 27, 2026, Plaintiff filed Charge No. 560-2026-01670 with the Equal Employment Opportunity Commission ("EEOC"), dual-filed with the Missouri Commission on Human Rights, attached hereto as Exhibit "A."

10. On or about July 31, 2026, the EEOC issued, and Plaintiff received, a Notice of Right to Sue as to Charge No. 560-2026-01670, attached hereto as Exhibit "B."

11. Plaintiff filed this Complaint within ninety (90) days of her receipt of the EEOC's Notice of Right to Sue.

12. Plaintiff's claims under 42 U.S.C. § 1981, the FMLA, the FLSA, and the MMWL are not subject to any administrative exhaustion requirement.

## PARTIES

13. Plaintiff, Dericia Green, is an individual and resident of St. Clair County, Illinois.

14. Defendant, Lakes Venture, LLC d/b/a Fresh Thyme Market, is a limited liability company that owns and operates the Fresh Thyme Market retail store located at 9920 Lin Ferry Drive, St. Louis, Missouri 63123-6914, where Plaintiff worked.

15. At all times relevant, Plaintiff was an employee of Defendant and Defendant was Plaintiff's employer.

16. At all times relevant, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and was a covered employer under Title VII.

17. At all times relevant to Plaintiff's FMLA claims, Defendant employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year and employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite at 9920 Lin Ferry Drive, St. Louis, Missouri.

18. At all times relevant to Plaintiff's wage claims, Defendant was an enterprise engaged in commerce or in the production of goods for commerce, with employees handling goods that have moved in commerce and an annual gross volume of sales made or business done of not less than $500,000.

19. At all times relevant to Plaintiff's wage claims, Plaintiff was a non-exempt employee.

## BACKGROUND FACTS

20. Plaintiff previously worked for Defendant at Defendant's Fairview Heights, Illinois location.

21. In or about July 2024, Michelle Robinson, a manager at Defendant's St. Louis location, asked Plaintiff to leave her then-current employment and return to work for Defendant.

22. Michelle Robinson told Plaintiff that she needed to begin work immediately, and Plaintiff resigned from her then-current position without notice in order to do so.

23. Plaintiff was employed by Defendant as an Experience Manager from on or about August 12, 2024, until her termination on or about February 18, 2026.

24. As an Experience Manager, Plaintiff's duties included but were not limited to overseeing the front end of the store, training employees, conducting administrative office work, and maintaining store operations.

25. Plaintiff had no prior discipline or write-ups and was entrusted with significant responsibilities.

26. For several months, Plaintiff assumed additional job duties without additional pay or a change in title.

27. Defendant paid Plaintiff on an hourly basis at a rate of approximately $24.00 per hour.

28. Plaintiff regularly worked forty (40) hours per week and, in many workweeks, additional hours in excess of forty (40).

29. Defendant recorded Plaintiff's work time through an electronic timekeeping system.

30. Upon information and belief, Defendant automatically deducted thirty (30) minutes from Plaintiff's recorded work time for a meal break each shift, regardless of whether or not Plaintiff took a meal break.

31. Defendant asked Plaintiff to perform work during her meal periods, and Plaintiff performed work during meal periods that were automatically deducted from her recorded time.

32. Plaintiff observed that her paychecks did not reflect all of the overtime hours she had worked.

33. Defendant did not compensate Plaintiff at one-and-one-half times her regular rate of pay for all hours worked in excess of forty (40) in a workweek.

34. Plaintiff met the obligations of her job duties.

35. Plaintiff's commute to Defendant's St. Louis location took approximately forty-five (45) minutes in each direction.

36. Michelle Robinson told Plaintiff that she could arrive late on days with inclement weather so that Plaintiff would not have to drive through storms, although Defendant ddi not consistently honor that arrangement.

37. Plaintiff is African American.

38. At all times relevant to Plaintiff's FMLA claims, Plaintiff had been employed by Defendant for at least twelve (12) months.

39. During the twelve (12) months preceding Plaintiff's need for leave, Plaintiff worked at least 1,250 hours for Defendant.

40. At the time of the challenged interference, Plaintiff had FMLA leave available under Defendant's applicable twelve-month leave period.

41. Throughout her employment, Plaintiff repeatedly complained to Defendant's management about race discrimination and race-based harassment.

42. Plaintiff submitted written complaints that were supposed to be forwarded to Defendant's Human Resources department, but her complaints were never escalated.

43. Plaintiff also reported the discrimination through Defendant's ethics line.

44. Despite Plaintiff's multiple complaints, Defendant did not follow up with Plaintiff and conducted no investigation.

45. On or about March 10, 2025, Experience Manager Administrator Jessica, who is white, stated to Plaintiff, "I hired a Black girl so you won't be the only one."

46. After that statement, Jessica used the N-word toward Plaintiff, an African American employee, on multiple occasions, directly in reference to Plaintiff and around Plaintiff in the workplace, including in the cash office and in front of other employees.

47. Jessica also stated that she did not believe the word was inappropriate to use.

48. Plaintiff reported Jessica's conduct to Store Director Michelle Robinson, who is white, as well as to other members of Defendant's management.

49. When Plaintiff complained to Michelle Robinson about the racial slurs and mistreatment, Robinson responded by telling Plaintiff, "you're my sister," and took no further action.

50. Despite Plaintiff's complaints, Defendant took no corrective action and Jessica's conduct continued.

51. Jessica held supervisory authority over Plaintiff, including authority over hiring and firing.

52. Plaintiff observed that the African American employees with whom she worked at Defendant's St. Louis location were terminated during her employment.

53. Plaintiff's mother passed away as a child.

54. After the death of Plaintiff's mother, Plaintiff's grandmother cared for Plaintiff and stood in the role of a parent to Plaintiff throughout Plaintiff's childhood.

55. Plaintiff held a power of attorney for her grandmother.

56. Plaintiff's grandmother suffered from a serious health condition that required inpatient care in a hospital and continuing treatment by a health care provider.

57. On or about January 30, 2026, Plaintiff informed Defendant's management that her grandmother was seriously ill and that Plaintiff would need time off to care for her.

58. On that same date, Plaintiff specifically requested information about taking FMLA leave and asked how much time she could take.

59. Management, including Michelle Robinson and Store Manager Andrew "Chris" Dinco, repeatedly brushed off Plaintiff's requests and refused to provide Plaintiff with information about FMLA leave or to allow her to apply for protected leave.

60. Michelle Robinson refused to address Plaintiff's request for FMLA leave and directed Plaintiff to Andrew Dinco, who was also dismissive of the request.

61. Instead, Defendant told Plaintiff that she would be held accountable for any absences.

62. In or around early February 2026, Andrew Dinco, who is white, became enraged on the sales floor, threw items, and used racial slurs toward Black employees, including Plaintiff and other African American team members.

63. When Plaintiff approached Andrew Dinco to ask what was wrong, Andrew Dinco slammed a door in Plaintiff's face.

64. This was not the first time Andrew Dinco had behaved aggressively toward Plaintiff or others.

65. Andrew Dinco regularly used the N-word in the workplace.

66. On or about February 12, 2026, Plaintiff informed Defendant's management that her grandmother's organs were shutting down and that Plaintiff was "falling apart" mentally and emotionally.

67. Despite this, Defendant still expected Plaintiff to work.

68. On or about February 12-13, 2026, a customer treated Plaintiff in a racially hostile manner while treating a white employee more favorably. Plaintiff reported the incident to Defendant's management.

69. Defendant created no report of Plaintiff's complaint and took no action in response.

70. On or about February 15, 2026, Plaintiff informed Defendant's management that her grandmother was in cardiac arrest and that Plaintiff's family had been called to the hospital.

71. On or about February 16, 2026, while Plaintiff was at the hospital with her grandmother, Defendant's management contacted Plaintiff about work-related issues.

72. Plaintiff asked whether she was expected to leave her grandmother's bedside and requested time to be with her.

73. Later that same day, Plaintiff's grandmother passed away.

74. On or about February 17, 2026, while Plaintiff was grieving, Defendant contacted Plaintiff about returning to work and reminded Plaintiff of her work obligations.

75. On or about February 18, 2026, Plaintiff reported to work and was called into a meeting with Andrew Dinco and Michelle Robinson.

76. In that meeting, Defendant told Plaintiff that she was being suspended for three days based on a customer complaint and required Plaintiff to turn in her keys.

77. Plaintiff was never returned to work after the suspension and was effectively terminated.

78. At no time prior to her suspension had Plaintiff been given any write-ups or discipline.

79. On or about February 20, 2026, Michelle Robinson informed Plaintiff that she disagreed with how Plaintiff had been treated and that she had resigned as a result.

80. Michelle Robinson also told Plaintiff that Andrew Dinco "definitely wanted [Plaintiff] gone."

81. Following the termination of her employment, Plaintiff fell behind on her bills and rent and faced eviction from her home.

82. Plaintiff is the only adult earning income in a household that includes at least two of her five children and her nine-year-old grandchild.

**COUNT I**
**Violation of 42 U.S.C. § 1981**
**(Race-Based Discrimination)**

83. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

84. Plaintiff is a member of a racial or ethnic group protected by Section 1981.

85. Plaintiff and Defendant were parties to an employment relationship under which Plaintiff performed work for Defendant in exchange for wages and benefits.

86. Defendant subjected Plaintiff to discriminatory discipline, including a three-day suspension, and to the termination of her employment.

87. Plaintiff's race was a but-for cause of Defendant's conduct.

88. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff in the making, performance, modification, or termination of her employment relationship in violation of 42 U.S.C. § 1981.

89. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

90. As a direct and proximate result of Defendant's race-based discrimination, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

**COUNT II**
**Violation of 42 U.S.C. § 1981**
**(Race-Based Harassment)**

91. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

92. Plaintiff is a member of a racial or ethnic group protected by Section 1981.

93. Plaintiff and Defendant were parties to an employment relationship under which Plaintiff performed work for Defendant in exchange for wages and benefits.

94. Defendant subjected Plaintiff to race-based harassment, including Jessica's repeated use of a racial slur toward Plaintiff and Andrew Dinco's use of racial slurs toward Plaintiff and other Black employees.

95. The harassment was unwelcome and was subjectively and objectively offensive.

96. The harassment was severe or pervasive and altered the terms and conditions of Plaintiff's employment.

97. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

98. Additionally, Jessica and Andrew Dinco were Plaintiff's supervisors and were empowered by Defendant to take tangible employment actions against Plaintiff.

99. By virtue of the conduct alleged herein, Defendant intentionally harassed Plaintiff because of her race in the performance and enjoyment of her employment relationship in violation of 42 U.S.C. § 1981.

100. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

101. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

## COUNT III
## Violation of 42 U.S.C. § 1981
## (Retaliation)

102. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

103. Plaintiff and Defendant were parties to an employment relationship under which Plaintiff performed work for Defendant in exchange for wages and benefits.

104. Plaintiff engaged in protected activity by complaining to Defendant's management about race discrimination and race-based harassment and by reporting the discrimination through Defendant's ethics line.

105. Defendant knew that Plaintiff engaged in protected activity.

106. After Plaintiff engaged in protected activity, Defendant subjected her to adverse actions, including a three-day suspension and the termination of her employment.

107. Plaintiff's protected activity was a but-for cause of Defendant's adverse actions.

108. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff for opposing race discrimination in the performance and enjoyment of her employment relationship in violation of 42 U.S.C. § 1981.

109. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

110. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

**COUNT IV**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Discrimination)**

111. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

112. Plaintiff met the obligations of her job duties.

113. Defendant subjected Plaintiff to adverse employment actions, including a three-day suspension and the termination of her employment.

114. Plaintiff's race was a motivating factor in Defendant's adverse employment actions.

115. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff because of her race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

116. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

117. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

**COUNT V**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Harassment)**

118. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

119. Defendant subjected Plaintiff to race-based harassment, including Jessica's repeated use of a racial slur toward Plaintiff and Andrew Dinco's use of racial slurs toward Plaintiff and other Black employees.

120. The harassment was unwelcome and was subjectively and objectively offensive.

121. The harassment was severe or pervasive.

122. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

123. Additionally, Jessica and Andrew Dinco were Plaintiff's supervisors and were empowered by Defendant to take tangible employment actions against Plaintiff.

124. By virtue of the conduct alleged herein, Defendant harassed Plaintiff because of her race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

125. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

126. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

## COUNT VI
## Violation of Title VII of the Civil Rights Act of 1964
## (Retaliation)

127. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

128. Plaintiff engaged in protected activity under Title VII by complaining to Defendant's management about race discrimination and race-based harassment and by reporting the discrimination through Defendant's ethics line.

129. Defendant knew that Plaintiff engaged in protected activity.

130. After Plaintiff engaged in protected activity, Defendant subjected her to adverse actions, including a three-day suspension and the termination of her employment.

131. Plaintiff's protected activity was a but-for cause of Defendant's adverse actions.

132. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a).

133. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

134. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, income, and benefits, as well as emotional distress, humiliation, out-of-pocket losses, and other non-pecuniary losses.

## COUNT VII
## Violation of the Family and Medical Leave Act
## (FMLA Interference)

135. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

136. By virtue of the conduct alleged herein, Defendant interfered with, restrained, or denied Plaintiff's exercise of FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

137. Plaintiff was an eligible employee entitled to FMLA leave and had a qualifying reason that entitled her to protected leave.

138. Plaintiff provided Defendant sufficient notice of her need for leave.

139. Defendant denied and discouraged Plaintiff's protected leave.

140. Plaintiff was prejudiced by Defendant's interference in that she was denied leave to which she was entitled and lost compensation and employment.

141. Defendant's violation was willful.

142. As a direct and proximate result, Plaintiff suffered damages recoverable under 29 U.S.C. § 2617(a).

**COUNT VIII**
**Violation of the Family and Medical Leave Act**
**(FMLA Retaliation)**

143. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

144. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2).

145. Plaintiff was eligible for FMLA leave and provided Defendant notice of her need for leave.

146. Plaintiff engaged in protected activity by requesting FMLA leave.

147. Defendant knew that Plaintiff requested protected leave.

148. After Plaintiff requested protected leave, Defendant subjected Plaintiff to adverse actions, including a three-day suspension and the termination of her employment.

149. Plaintiff's request for FMLA leave was a negative factor in, a motivating factor in, and a but-for cause of Defendant's adverse actions.

150. Defendant's violation was willful.

151. Plaintiff suffered damages recoverable under 29 U.S.C. § 2617(a).

**COUNT IX**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)**
**(Unpaid Overtime Compensation)**

152. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

153. This count arises from Defendant's violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for its failure to pay minimum wage to Plaintiff for all time worked.

154. At all relevant times, Defendant was an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s).

155. Plaintiff was a non-exempt employee entitled to overtime compensation for all hours worked in excess of forty (40) in a workweek.

156. Plaintiff worked in excess of forty (40) hours in numerous workweeks during her employment with Defendant.

157. Defendant automatically deducted thirty (30) minutes from Plaintiff's recorded work time for a meal break each shift, whether or not Plaintiff took a meal break.

158. Plaintiff performed compensable work during meal periods that Defendant deducted from her recorded work time, and Plaintiff was not completely relieved from duty during those periods.

159. Defendant knew or should have known that Plaintiff was performing work during automatically deducted meal periods.

160. Defendant failed to compensate Plaintiff at one and one-half times her regular rate of pay for all hours worked in excess of forty (40) in a workweek, in violation of 29 U.S.C. § 207(a).

161. Defendant's violation was willful.

162. As a direct and proximate result, Plaintiff suffered damages recoverable under 29 U.S.C. § 216(b), including unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

## COUNT X
**Violation of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.505**
**(Unpaid Overtime Compensation)**

163. Plaintiff repeats and re-alleges all preceding paragraphs as if fully set forth herein.

164. Plaintiff performed work for Defendant in the State of Missouri.

165. Plaintiff was a non-exempt employee entitled to overtime compensation for all hours worked in excess of forty (40) in a workweek.

166. Plaintiff worked in excess of forty (40) hours in numerous workweeks during her employment with Defendant.

167. Defendant automatically deducted thirty (30) minutes from Plaintiff's recorded work time for a meal break each shift, whether or not Plaintiff took a meal break, and Plaintiff performed compensable work during those periods.

168. Defendant failed to compensate Plaintiff at one and one-half times her regular rate of pay for all hours worked in excess of forty (40) in a workweek, in violation of Mo. Rev. Stat. § 290.505.

169. As a direct and proximate result, Plaintiff suffered damages recoverable under Mo. Rev. Stat. § 290.527, including the full amount of the wage rate due, an additional amount equal to twice the unpaid wages as liquidated damages, and reasonable attorneys' fees and costs.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Front pay;

d. Lost employment benefits;

e. Compensatory and punitive damages;

f. Liquidated damages;

g. Unpaid overtime compensation and an additional equal amount as liquidated damages under the FLSA;

h. Unpaid overtime compensation and an additional amount equal to twice the unpaid wages as liquidated damages under the MMWL;

i. Reasonable attorneys' fees and costs;

j. Prejudgment and post-judgment interest; and

k. Any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 2, 2026.

***/s/ Nathan C. Volheim***
**NATHAN C. VOLHEIM, ESQ.**
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: 630-575-8181
nvolheim@sulaimanlaw.com
*Counsel for Plaintiff*